IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO F. FEBUS-CRUZ, et al.,

    **Plaintiffs,**

        **v.**                  **CIVIL NO.** 09-1365 (FAB)

HERIBERTO SAURI-SANTIAGO,
et al.,

    **Defendants.**

OPINION & ORDER

BESOSA, District Judge.

On June 8, 2009 plaintiffs Julio F. Febus-Cruz ("Febus"), Ana H. Ortega-Matos, and the Febus-Ortega conjugal partnership filed an amended complaint against defendants Heriberto N. Sauri-Santiago ("Sauri"), Executive Director of Puerto Rico's Agencia Estatal Para el Manejo de Emergencias y Administracion de Desastres ("AEMEAD"), Salvador Collazo-Cartagena ("Collazo"), Orocovis Zone Director of AEMEAD, and Emanuel Cantres-Carmona ("Cantres"), AEMEAD's Director of Human Resources. (Docket No. 28) The claims against Sauri and Collazo are in both their individual and official capacities, whereas the claims against Cantres are only in his official capacity. Plaintiffs allege that the defendants, pursuant to 42 U.S.C. § 1983, violated Febus's rights to due process, equal protection, and freedom of political expression. Plaintiffs also append several Puerto Rico Commonwealth law claims.

Defendants moved to dismiss plaintiffs' claims pursuant to Rules 12(b)(6) and 12(b)(7) on June 15, 2009. (Docket No. 32) Plaintiffs opposed this motion on June 22, 2009. (Docket No. 41) For the reasons provided below, the Court **GRANTS IN PART and DENIES IN PART** defendants' motion.

## I.    Background

### A.    Febus's background at AEMEAD

Febus, a former regular career employee of the Municipality of Barranquitas, was appointed to the career position of Deputy Director ("Sub-Director") of the Orocovis Zone of AEMEAD effective September 1, 2008. The appointment was for a six-month probationary period. Febus received satisfactory evaluations from his then supervisor Oscar Sotomayor-Vincent ("Sotomayor"), in September, November and December of 2008. On February 18, 2009, Collazo met with Febus to discuss with him new evaluations, signed by Collazo, for the same time periods as the evaluations signed by Sotomayor. The evaluations signed by Collazo all found Febus's performance to be unsatisfactory.

During the February 18, 2009 meeting, Collazo told Febus that his job should have been given to a member of the New Progressive Party ("NPP") named Raul. That same day Sauri signed Febus's termination letter. Nonetheless, the letter was not provided to Febus until February 27, 2009. That letter stated that

Febus's termination would be effective the following day, February 28, 2009.

**B.    Allegations relating to Febus's status as an PDP member**

Plaintiffs allege that all three defendants: Sauri, Collazo, and Cantres belong to the NPP.  Febus, however, is allegedly a "known member" of the Popular Democratic Party ("PDP"). Febus alleges that defendants know him to be a member of the PDP for the following reasons:  (1) he is actively "affiliated" with the PDP and has participated in PDP activities such as marches, meetings, caravans and handing out leaflets; (2) he was a campaign manager for unnamed PDP candidates and he worked at unnamed poll stations at unspecified times; (3) Zulma Ortiz ("Ortiz"), "a confidante of the defendants" knows that Febus worked as a campaign manager and in some capacity at poll stations; (4) Ortiz is a poll watcher for the NPP in Orocovis and she has personally seen Febus "exercising his political [sic.] partisan [sic.] activities;" (5) Ortiz shared her knowledge of Febus's political affiliation with the defendants "because it would advance their shared political beliefs;" (6) Febus participated in PDP activities covered by local radio and television; (7) Febus participated in radio programs in which he identified himself as a PDP member; (8) Febus "is a highly visible leader of the PDP;" (9) Febus was replaced by Julio Vazquez, a member of the NPP; (10) Collazo's attitude toward Febus changed immediately after the general elections of 2008; (11) Febus

did not celebrate the victory by the NPP in the 2008 general election; (12) Collazo "publicly celebrat[ed]" the NPP victory; (13) Collazo wanted to remove various unnamed PDP radio operators but was unable to do so; (14) Febus attests that the political affiliation of employees at AEMEAD was commonly discussed among co-workers; and because (15) the work environment at AEMEAD was politically charged.

## II. Discussion

### A.    Failure to State a Claim

Rule 12(b)(6) provides a vehicle for defendants to request the dismissal of a case or claims for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). To adjudicate a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint or, as in this case, the amended complaint. Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citations omitted). These allegations are viewed through the prism of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To comply with Rule 8, a complaint need not include "detailed factual allegations" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555) (additional citation omitted). The factual allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). Complaints that offer "labels," conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" fail to rise above the speculative level. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. To survive a motion to dismiss, a complaint must allege factual matter that states a "claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

A complaint is facially plausible if it allows a court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

In passing on a motion to dismiss, a court must follow two principles:  (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense.  Iqbal, 129 S.Ct. at 1949-50 (quoting Twombly, 550 U.S. at 555-56).  In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  Iqbal, 129 S.Ct. at 1950.

### 1.   42 U.S.C. § 1983

Febus raises all of his claims for the violation of his constitutional rights pursuant to section 1983.  This statutory provision "affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right."  Omni Behavioral Health v. Miller, 285 F.3d 646, 650-51 (8th Cir. 2002); see also Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000).  It is well-settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements:  (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges or immunities; and (3) that the defendants' alleged conduct was causally connected to the

plaintiff's deprivation.   Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).

There can be no question that the first element is satisfied against all defendants because plaintiffs alleged that all three defendants are officials of AEMEAD and that they acted in their capacity as AEMEAD officials to terminate Febus from his employment.  The court addresses the second element of each section 1983 claim in the subsequent sections of this opinion.  The third element is at least superficially satisfied for defendants Collazo and Sauri: plaintiffs allege that Collazo produced ficticious negative evaluations of Febus and told him that an NPP member should have been hired in his stead; and plaintiffs allege that Sauri signed the letter which officially separated Febus from his employment with AEMEAD.  It is not satisfied, however, in regards to defendant Cantres because plaintiffs fail to include a single specific allegation against Cantres.  As Director of Human Resources for AEMEAD, plaintiffs may assume that it is implicit that he or someone in his department had to process the paperwork resulting in Febus's termination from employment.  Such an assumption is insufficient, however, to sustain a section 1983 claim against Cantres.  In the absence of any articulated claim against Cantres, and with the awareness that he need not be a party in his official capacity for Febus to obtain all of the relief that

he requests, the Court **DISMISSES** all of Febus's section 1983 claims against Cantres.

### a.    Political Discrimination

The First Amendment right to freedom of speech and association provide non-policymaking public employees with protection from adverse employment decisions based on their political affiliation. Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000); see also Rutan v. Republican Party, 497 U.S. 62, 75 (1990); Branti v. Finkel, 445 U.S. 507, 516 (1980); Elrod v. Burns, 427 U.S. 347, 354 (1976). The Mount Healthy two-part burden shifting framework is used to evaluate claims of political discrimination. Padilla-Garcia, 212 F.3d at 74; c.f., Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (applying the two-part burden shifting analysis to a free speech claim). A plaintiff alleging political discrimination bears the threshold burden of producing sufficient evidence, whether direct or circumstantial, that he or she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action. Gonzalez-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004); Rodriguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998). "The plaintiff must point to evidence on the record which, if credited, would permit a rational fact-finder to conclude that the challenged personnel action occurred and stemmed from a

politically based discriminatory animus." <u>Gonzalez-Blasini</u>, 377
F.3d at 85 (<u>quoting</u> <u>LaRou v. Ridlon</u>, 98 F.3d 659, 661 (1st Cir.
1996) (<u>quoting in turn</u> <u>Rivera-Cotto v. Rivera</u>, 38 F.3d 611, 614
(1st Cir. 1994))).

        To establish a *prima facie* case, the plaintiff
must show that (1) the plaintiff and the defendant belong to
opposing political affiliations; (2) the defendant has knowledge of
the plaintiff's affiliation; (3) a challenged employment action
occurred; and (4) political affiliation was a substantial or
motivating factor behind the challenged employment action. <u>Martin-
Velez v. Rey-Hernandez</u>, 506 F.3d 32, 39 (1st Cir. 2007); <u>Pequero-
Moronta v. Santiago</u>, 464 F.3d 29, 48 (1st Cir. 2006). The burden
then shifts to the defendant, who must articulate a
nondiscriminatory basis for the adverse employment action and
establish by a preponderance of the evidence that he would have
taken the same employment action regardless of the plaintiff's
political affiliation. <u>Padilla-Garcia</u>, 212 F.3d at 74; <u>Rodriquez-
Rios</u>, 138 F.3d at 24. The shifting burden, known as the <u>Mt.
Healthy</u> defense, "ensures that a plaintiff-employee who would have
been dismissed in any event on legitimate grounds is not placed in
a better position merely by virtue of the exercise of a
constitutional right irrelevant to the adverse employment action."
<u>Acevedo-Diaz v. Aponte</u>, 1 F.3d 62, 66 (1st Cir. 1993) (citations
omitted). The evidence by which the plaintiff established a *prima*

*facie* case may suffice for a fact-finder to infer that the defendant's proffered nondiscriminatory ground for the adverse employment action is pretextual, and "check" summary judgment. Padilla-Garcia, 212 F.3d at 78.

Evidence of a highly-charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially where a plaintiff was a conspicuous target for political discrimination. Rodriguez-Rios, 138 F.3d at 24; see also Padilla-Garcia, 212 F.3d at 75-76 (upholding a denial of summary judgment where evidence showed that defendants knew of plaintiff's party affiliation, plaintiff was a conspicuous party member and witnesses testified as to defendant's desire to humiliate plaintiff). Evidence that a plaintiff held a trust position under a previous administration of opposing political affiliation, and that plaintiff is a well-known supporter of a different political party, however, may not suffice to show that a challenged employment action was premised upon political affiliation. Gonzalez-Blasini, 377 F.3d at 85-86; see also Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 48 (1st Cir. 2004) (upholding a grant of summary judgment where the mayor "voiced his intention to rid the town of NPP activists"). Additionally, mere temporal proximity between an adverse employment action and a change of administration is

insufficient to establish discriminatory animus.  <u>Acevedo-Diaz</u>, 1 F.3d at 69.

Plaintiffs have certainly alleged all four elements of a *prima facie* case: (1) the defendants are all NPP members, while Febus is a member of the PDP; (2) the defendants know of Febus's party membership; (3) Febus was terminated from his employment; and (4) that the defendants terminated Febus because of his political affiliation.  Defendants challenge plaintiffs' allegations as conclusory and insufficiently plausible. Specifically, defendants focus on the second and fourth elements of plaintiffs' *prima facie* claim: arguing that the defendants' did not know of Febus's party membership and that Febus's political affiliation was not a substantial or motivating factor in his termination.

Febus relies on the following general allegations to establish the second element of his *prima facie* case, that defendants know that he is a member of the PDP: Febus claims that he is a "highly visible leader of the PDP" because he has "frequently and vigorously" participated in PDP caravans, marches, meetings and distributions of leaflets.  He has also been a campaign manager and worked at polling stations.  He asserts that Ortiz, "a confidante of the defendants" and an NPP poll watcher in Orocovis, has personally seen him promote his PDP membership. Febus asserts that he has told the defendants of his membership in

the PDP "because it would advance their shared political beliefs." Febus also states that he has participated in radio programs in which he identified himself as a PDP member and that he participated in political activities that were covered by local radio and television.  In addition to his own activities that might have made him notorious, Febus alleges that the work environment at AEMEAD was "politically charged" and that the political membership of all of his co-workers was common knowledge in the office.  He alleges that his co-workers informed the defendants of his party membership.  None of these allegations, however, pass the test for sufficiency set out in Iqbal.  See generally Thomas v. Rhode Island, 542 F.3d 944, 948-49 (1st Cir. 2008) (applying Twombly in a section 1983 action); Morales-Tanon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 18-20 (1st Cir. 2008) (same); Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29-30 (1st Cir. 2008) (same).

Febus's assertion that the defendants know his party affiliation is conclusory, as is his claim that all of his co-workers know his political affiliation.  The remaining allegations are not conclusory, but they do not raise a plausible inference that the defendants knew of Febus's party affiliation. For example, although Febus's allegation that Ortiz, a poll watcher herself, saw him engage in partisan activities for the PDP at some unknown place and time, would be sufficient to show that Ortiz knew of his party affiliation, that knowledge does not automatically

pass to the defendants simply because Febus names Ortiz a "confidante" of the three defendants.  Similarly, the alleged fact that Febus appeared on radio programs and television shows, some of which were local, is of little relevance unless the defendants actually listened to the radio programs or watched the TV shows. Because Febus has made no other allegations relevant to determining Sauri or Cantres's knowledge of Febus's political affiliation,[1] and the aforementioned general allegations are insufficient to carry plaintiffs' burden on this element, the Court **DISMISSES** Febus's section 1983 political affiliation claims against Sauri in his individual capacity and against Cantres in his official capacity. See, e.g., Gonzalez-Pina v. Rodriquez, 407 F.3d 425, 432 (1st Cir. 2005) (finding that the plaintiff failed to show "political animus" by the defendant mayor where the "only assertion regarding the Mayor personally is that [plaintiff] attempted to speak with him at a Christmas party and was told that they had nothing to talk about"); Padilla-Garcia v. Guillermo-Rodriquez, 212 F.3d 69, 74 (1st Cir. 2000) (demonstrating political animus "requires more than merely juxtaposing a protected characteristic-someone else's politics-with the fact that plaintiff was treated unfairly").

---

[1] The only concrete allegation directed towards Sauri specifically is that he signed Febus's termination letter on February 18, 2009. Plaintiffs make no specific allegation related to Cantres's knowledge of Febus's political affiliation, his role in Febus's dismissal, or what might have motivated him to dismiss Febus.

Defendant Collazo, is another story, however, because plaintiffs have included additional allegations concerning his knowledge of Febus's party affiliation and concerning his motivation for terminating Febus from his employment.  Plaintiffs allege that Collazo met with Febus on February 18, 2009, during which he gave Febus a set of unsatisfactory performance evaluations.  These evaluations covered the same time period for which Febus received satisfactory evaluations from his previous supervisor, Sotomayor.  During this meeting, Collazo allegedly told Febus that an NPP member named Raul who had also competed for Febus's position should have received it instead of Febus.  The fact that Collazo issued an overlapping set of evaluations in which he reached the opposite conclusion from that reached by Sotomayor, suggests that he may have issued Febus negative evaluations as a pretext for another reason.  Collazo's comment that Raul, an NPP member, should have been hired instead of Febus suggests that Collazo wanted to promote NPP partisans and that he did not consider Febus to be of the NPP party.  These specific allegations lead to plausible inferences that Collazo knew that Febus was a PDP member and that Collazo was motivated to terminate his employment because of his political affiliation.  Accordingly, the Court **DENIES** defendants' motion to dismiss Febus's political discrimination claim against Collazo in his individual capacity, but **GRANTS** it in Collazo's official capacity.

### b.    Procedural Due Process

The Due Process Clause of the Fourteenth Amendment guarantees those public employees who possess a property interest in continued employment the right to notice and a hearing prior to the termination of their employment. Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 542-44 (1985); Gonzalez-Blasini, 377 F.3d at 86; Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1173 (1st Cir. 1988). "In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that [he] has a legally recognized expectation that [he] will retain [his] position." Gonzalez-Blasini, 377 F.3d at 86 (quoting Santana v. Calderon, 342 F.3d 18, 24 (1st Cir. 2003)). Property interests are not created by the Constitution; rather "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). "A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace." Santana, 342 F.3d at 24 (citing Perry v. Sindermann, 408 U.S. 593, 601-02 (1972)); see also Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st Cir. 2006).

In Puerto Rico, government employees may be classified as "transitory" or "temporary," on the one hand, or as

"career" or "permanent" on the other.[2]   Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 27 n.4 (1st Cir. 2004), *vacated on other grounds*, 546 U.S. 1163 (2006).   "Career" employees have a property right in their continued employment.   See, e.g., Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000).   This right does not vest, however, until employees appointed to a "career" position have "satisfactorily complete[d]" their probation period.   Laws of P.R. Ann. tit 3 § 1461(36) ("[during the probationary] period, the employee has not acquired any proprietary rights over the position").

Plaintiffs allege that Febus was still within the probationary period when he was terminated from his employment. Given that Febus had not yet achieved "regular career employee" status at the time of his termination, Febus did not have a legally recognized expectation to continued employment when he was terminated.   Therefore, he has not stated a claim for the violation of a property right.

Febus argues, however, that in terminating his employment, the defendants did not provide him with ten days notice as they were required to do under Puerto Rico law.   Plaintiffs assert that the failure to provide Febus with ten days notice of

---

[2] Although not relevant to the threshold question of whether Febus had a constitutionally protected right to continued employment, government employees in Puerto Rico may also be categorized as career (i.e., non-political) versus trust/confidential.   See Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005).

his termination entitles him to full time career employee status. Plaintiffs fail, however, to provide any legal support for their position.

        The statutory provision regarding notice provides that "[t]he final action shall be notified in writing to the employee at least ten (10) days in advance of its effectiveness." Laws of P.R. Ann. tit 3 § 1462b(3)(f)(D).  This provision does not create a default appointment mechanism for probationary candidates for a career position.  In stating that "final action" shall be notified rather than referring to the "approval" or "rejection" of a candidate, the statute calls for notification before undertaking any kind of employment-related action, not only a termination but also an approval.  Plaintiff's reading of this provision as implicitly providing for approval by default of any probationary employee who was not provided ten days notice of a negative employment decision is not faithful to the plain language of the statute.  It is also unsupported by other statutory provisions or reported cases.  Rather than hinting at an implied right to employment upon the expiration of the probationary period, the Puerto Rico statute suggests that the substantive requirements of the probationary period must have been met.  See Laws of P.R. Ann. tit 3 § 1462b(3)(g) ("Upon *satisfactorily* completing the probation period, the employee shall become a regular career employee") (emphasis added); Zambrana v. Gonzalez,

145 D.P.R. 616, 632-33 (1998) ("The *satisfactory* completion of the probationary period is one of the most important stages of the recruiting process") (Corrada del Rio, J., concurring) (emphasis added); Gierbolini Colon v. Aponte Roque, 666 F.Supp.334, 337 (D.P.R. 1987) ("[plaintiff] was a probationary employee until the last evaluation on that probation was finished and a decision on whether he satisfactorily completed the period was made.")  Given the statute's focus on evaluation and satisfactory completion of the probationary period, the defendants' failure to comply with the ten-day notice period did not vest in Febus the right to a regular career position.  This understanding of the notice provision is consistent with decisions reached by other courts in other jurisdictions concerning the effect of completing the probationary time period.  See, e.g., Curby v. Archon, 216 F.3d 549, 553 (6th Cir. 2000) ("after [plaintiff] finished his probationary period, the Village did not finally appoint him as a deputy marshal. [Plaintiff] thus had no reasonable expectation of continued employment."); Jolly v. Listerman, 672 F.2d 935, 941 (D.C.Cir. 1982) ("just as there is generally no protected interest in keeping a particular job beyond a probationary period, there is no recognized property right in a mere chance or expectation of being hired (or . . . rehired) by a particular employer or to a particular position.").  Thus, because defendant's failure to comply with the ten-day notice period did not by process of law

make Febus a regular career employee, he remained a probationary employee at the time that he was separated from his employment.  As a probationary employee, he had no property right to continued employment.  Having no property right to continued employment, Febus did not have a procedural due process right to notice and a pretermination hearing.  Therefore, the Court **DISMISSES** Febus's due process claims against all defendants.

      **c.**   **Equal Protection**

Although the court welcomes what it will term "imaginative" lawyering from time to time, novel arguments must still be based on a firm theoretical framework and be supported by non-conclusory factual allegations suggestive of a plausible claim to relief to survive early dismissal.  Plaintiffs in their one paragraph long reference to "class of one" and "selective enforcement" equal protection cases (see Docket No. 41, pp. 18-19), though hinting at a novel theory of liability, fail categorically to state a claim for which relief may be granted.

The amended complaint itself references a violation of Febus's right to equal protection but it provides no specific factual allegations to distinguish the equal protection claim from Febus's right to political affiliation claim.  Febus's failure or inability to distinguish his equal protection claim from his political affiliation claim is dispositive of the equal protection claim; where there is no distinct basis for alleging an

equal protection violation, that claim is subsumed by the First
Amendment claim.  See Pagan v. Calderon, 448 F.3d 16, 36-37 (1st
Cir. 2006) ("so long as [plaintiff's] allegations of political
discrimination fit within the contours of the First Amendment, they
are, *a fortiori*, insufficient to ground a claim that the
politically-inspired misconduct violated equal protection
guarantees.")  Perhaps in a feeble attempt to step out of the
confines of clear First Circuit Court of Appeals precedent on this
point, Febus, in his opposition to the motion to dismiss, argues
for the first time that he may raise an equal protection claim
because he is a "class of one" and because the defendants
"selectively enforced" regulations against him.  These arguments
are completely unavailing because Febus fails to allege a claim
properly under either the class of one or selective enforcement
theory.  He also fails to explain how, or why, those theories of
liability, which have been applied in very different factual
contexts, should apply in this case.

          Febus cites to Village of Willowbrook v. Olech,
528 U.S. 562 (2000) (involving a landowner's challenge to a
village's demand for a 33-foot easement as a requirement for water
service), Allegheny Pittsburgh Coal Co. v. County Comm. Of Webster
County, West Virginia, 488 U.S. 336 (1989) (involving a landowner's
challenge to a local tax assessment), and Sioux City Bridge Co. v.
Dakota County, Neb., 260 U.S. 441 (1923) (same) in support of his

class of one claim.  These cases recognize a claim for those "class
of one" plaintiffs who "allege[] that [they have] been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment."  Olech, 528 U.S. at 564 (internal citations omitted).
These cases relied on the principle that the Fourteenth Amendment
secures every person "against intentional and arbitrary
discrimination, whether occasioned by express terms of a statute or
by its improper execution through duly constituted agents."  Id.
Although Febus has alleged that the defendants intentionally
discriminated against him, he has failed to allege that other
similarly situated people were treated differently.  As such, he
fails to allege a minimally sufficient claim in even conclusory
terms, let alone support the claim with facts raising a plausible
claim to relief.  He also fails to explain (perhaps because it is
well-nigh impossible) why an equal protection doctrine applied to
protect real property owners against actions by local authorities
should be applied to a claim for employment discrimination.

          Febus's "selective enforcement" claim suffers
from the same deficiencies.  To establish a claim for an equal
protection violation by reason of "selective enforcement" of law or
regulation against the plaintiff, the plaintiff must show that
"(1) the person, compared with others similarly situated, was
selectively treated; and (2) that such selective treatment was

based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (involving a challenge by landowners to local zoning-variance and code-enforcement actions by municipal officials); Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. Of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989) (involving a challenge by a restaurant to the "closing time" requirement imposed by a local licensing authority as a condition to obtain a liquor license). As with the "class of one" claim, Febus fails to state a "selective enforcement" claim because he utterly fails to allege that he was "selectively treated" as compared to other similarly situated individuals. The amended complaint makes no reference to other similarly situated individuals (nor does the opposition to the motion to dismiss for that matter). Febus also fails to explain, as he did with the class of one claim, why a doctrine applied to challenge local regulatory decisions should be applied in the employment discrimination context.

In sum, Febus fails to state a claim for violation of his right to equal protection because the claim as alleged is coextensive with his political discrimination claim. Furthermore, although he references the "class of one" and "selective enforcement" doctrines, he does not explain how those doctrines apply in an employment discrimination case nor does he

allege that he was treated differently than other similarly situated people.  Febus's equal protection claim, to the extent it has been alleged, is **DISMISSED**.

**B.    Federal Rule of Civil Procedure 12(b)(7)**

Pursuant to Rule 12(b)(7) defendants may request dismissal of a case where plaintiffs failed to join a "necessary party" pursuant to Rule 19.  Fed.R.Civ.P. 12(7); Picciotto v. Continental Casualty Co., 512 F.3d 9, 16 n.10 (1st Cir. 2008). Rule 19 provides for dismissal of suits if the court determines both that joinder of "necessary" parties is not feasible and that those parties are "indispensable" to the suit.  Picciotto, 512 F.3d at 15.  In undertaking this two-part analysis, courts are guided by the policies underlying Rule 19, "including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Id. at 15-16 (quoting Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982)).

To determine if someone is a necessary party, courts "decide whether a person fits the definition of those who should 'be joined if feasible' under Rule 19(a)."  Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989). Such a party is one (1) without whom the court cannot accord

complete relief; or (2) who claims an interest relating to the subject of the action and is situated such that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest; or (3) whose claimed interest in the subject of the action would leave defendants subject to substantial risk of incurring multiple or otherwise inconsistent obligations.  Fed.R.Civ.P. 19(a)(1); see also Picciotto, 512 F.3d at 16.  If the court determines that someone is a necessary party but one that cannot be feasibly joined, then the court proceeds to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b); see also In re Cambridge Biotech Corp., 186 F.3d 1356, 1372 (1st Cir. 1999). In other words, the court determines whether or not the party is "indispensable." In re Cambridge Biotech Corp., 186 F.3d at 1372 (quoting Pujol, 877 F.2d at 134).

        Rule 19(b) specifies that four factors guide the indispensability analysis: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were

dismissed for nonjoinder.   Fed.R.Civ.P. 19(b); see also B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 516 F.3d 18, 23 (1st Cir. 2008).   Courts accord no set weight to these four factors. Id. (citing Assoc. Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1124 (2d Cir. 1990)).   Courts "may [also] take into account other considerations in determining whether or not to proceed without the absentee as long as they are relevant to the question of whether to proceed in equity and good conscience."   Id. (citations and internal quotations omitted).   On the whole, evaluating the "indispensability" factors involves "fact-intensive analysis," "balancing competing interest[s]," and "pragmatic considerations."   In re Olympic Mills Corp., 477 F.3d 1, 9 (1st Cir. 2007) (quoting in part, Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989) (quoting Advisory Committee Notes)).

     Defendants argue that the court should dismiss plaintiffs' claims because the Municipality of Barranquitas, Febus's employer prior to his acceptance of the position with AEMEAD, *may* be a necessary and indispensable party.   In arriving at this conclusion, defendants note that Febus has requested, as a contingent remedy, that he be placed in a position "similar or equal to that he held at the time of his appointment" to the position of Zone Director.   (See Docket No. 28, p. 12.)   Because the position he held prior to accepting his probationary appointment to the Zone Director position was with the Municipality

of Barranquitas, defendants argue that the Municipality must be joined  to grant Febus the complete relief that he requests. (Docket No. 32, p. 23.)  Defendants provide no legal authority for their position, however, nor does Febus claim that the Municipality is under any obligation to place him in his prior position.

        At the time of his termination from employment, Febus was a probationary employee of AEMEAD.  Neither party has drawn the Court's attention to any statute that provides a "right to return" or "reinstatement" to a probationary career employee.  Instead, the defendants focus upon statutes that provide a regular career employee with the "right to be reinstated" when that employee accepted a trust (or confidential service) position or was elected to public office.  Laws of P.R. Ann. tit 3 § 1465a; Laws of P.R. Ann. tit 21 § 4559.  By their very terms, these provisions do not apply to career employees, such as Febus, who have accepted a new probationary career position rather than a trust or confidential service position.  Therefore, defendants have provided no authority for their assertion that the Municipality is under an obligation to reinstate Febus to his previously held position.  Moreover, Febus himself asserts that he ceased being an employee of the Municipality once he accepted the position with AEMEAD and he avows that the Municipality has no duty to reinstate him.

        Because the Municipality is under no duty to reinstate Febus, it need not be joined in order to provide Febus with

complete relief.  Defendants have alleged no other basis for finding the Municipality to be a necessary party.  Accordingly, the Court holds that the Municipality is not a necessary party and the Court need not undertake the second stage of analysis, to determine whether the Municipality is an indispensable party.  The Court notes, however, that had it determined that the Municipality were a necessary party, there is nothing in the record as it stands to suggest that the Municipality could not now be joined.  Therefore, even if the Court had found the Municipality to be a necessary party, it would not have dismissed the suit for failure to join the Municipality; it would have ordered that the Municipality be joined to the case.  See Fed.R.Civ.P. 19(a)(2).

### C.    Commonwealth Law Claims

The only defense raised by defendants in relation to the Commonwealth law claims is that those claims should be dismissed without prejudice presuming that the Court would dismiss all of the federal claims.  Because the Court has not dismissed the political discrimination claim against Collazo in his individual capacity, nor against Sauri in his official capacity, the plaintiffs' Commonwealth claims remain against those defendants.

### D.    11th Amendment Immunity

Plaintiffs do not dispute that Eleventh Amendment immunity applies to the remaining claims against Sauri in his official capacity.  The claims remain only so that the Court may

order injunctive relief, and any other appropriate relief, should Febus succeed on his political discrimination claim.

### III. Conclusion

For the reasons stated above, the Court **DISMISSES** all of Febus's federal claims against Cantres; **DISMISSES** Febus's political discrimination claim against Sauri in his individual capacity; **DISMISSES** Febus's political discrimination claim against Collazo in his official capacity; **DISMISSES** Febus's procedural due process claims against all defendants; and **DISMISSES** Febus's equal protection claims against all defendants.  Because the First Amendment claim remains against Collazo in his personal capacity, as well as against Sauri in his official capacity, the Court retains jurisdiction over the Commonwealth law claims against those two defendants only; the Commonwealth claims against Cantres are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 23, 2009.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE